**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **ROBERT HUMES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-CV-3050** |
| | ) | |
| **SAMUEL ROSARIO, in his official** | ) | |
| **and individual capacities; KENNY** | ) | |
| **WINSLOW, in his official and** | ) | |
| **individual capacities; and THE** | ) | |
| **CITY OF SPRINGFIELD, ILLINOIS** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss First Amended Complaint (d/e 13) filed by Defendants City of Springfield and Springfield Police Chief Kenny Winslow.  The Motion seeks to dismiss Counts II and V, the only counts brought against Chief Winslow and the City.

The Motion is GRANTED IN PART and DENIED IN PART.  The official capacity claim against Chief Winslow in Count Two is dismissed but Count Two remains against the City and Chief Winslow in his individual capacity.  Count Five is dismissed to the

extent Plaintiff seeks to hold the City liable under § 1983 on a respondeat superior theory but remains to the extent Plaintiff seeks to hold the City liable under a respondeat superior theory with respect to Plaintiff's state law claims against Defendant Officer Samuel Rosario—Counts Three and Four.

## I. INTRODUCTION

Plaintiff Robert Humes originally filed this suit in February 2019 against Samuel Rosario, who was at all times relevant employed as a police officer for the City of Springfield; Kenny Winslow, the Chief of Police; and the City of Springfield, Illinois. Plaintiff sued Officer Rosario and Chief Winslow in their official and individual capacities.

In June 2019, this Court dismissed Count Two, the failure to train claim, for failure to state a claim. The Court denied the motion to dismiss Count Five, finding Plaintiff stated a claim that the City is liable under a theory of respondeat superior for Officer Rosario's alleged assault and battery of Plaintiff. The Court granted Plaintiff leave to amend.

On June 26, 2019, Plaintiff filed a five-count Amended Complaint. Plaintiff brings claims pursuant to 42 U.S.C. § 1983,

alleging that Officer Rosario unreasonably seized Plaintiff and deprived Plaintiff of liberty without due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Count One) and alleging that Chief Winslow and the City failed to train, instruct, and supervise Officer Rosario and other officers in the Springfield Police Department (Count Two). Plaintiff also brings state law claims against Officer Rosario for assault and battery (Counts Three and Four) and against the City under a respondeat superior liability theory (Count Five).

Chief Winslow and the City move to dismiss Counts Two and Five.

## II. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff brings claims based on 42 U.S.C. § 1983, a federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper because a substantial part of the events or omissions giving

rise to Plaintiff's claims occurred in this district. 28 U.S.C.

§ 1391(b)(2).

### III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the

complaint. <u>Christensen v. Cty. of Boone, Ill.</u>, 483 F.3d 454, 458

(7th Cir. 2007). To state a claim for relief, a plaintiff need only

provide a short and plain statement of the claim showing the

plaintiff is entitled to relief and giving the defendants fair notice of

the claims. <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir.

2008).

When considering a motion to dismiss under Rule 12(b)(6), the

Court construes the complaint in the light most favorable to the

plaintiff, accepting all well-pleaded allegations as true and

construing all reasonable inferences in plaintiff's favor. <u>Id.</u>

However, the complaint must set forth facts that plausibly

demonstrate a claim for relief. <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544, 547 (2007). A plausible claim is one that alleges factual

content from which the Court can reasonably infer that the

defendants are liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 678 (2009). Merely reciting the elements of a cause

of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

## IV. FACTS ALLEGED IN THE AMENDED COMPLAINT

The following facts come from the Amended Complaint and are accepted as true at the motion to dismiss stage.  Tamayo, 526 F.3d at 1081.

On February 27, 2017, Officer Rosario arrived at Plaintiff's residence to investigate a possible crime committed by an individual other than Plaintiff.  Am. Compl. ¶ 9.  During Officer Rosario's official investigation of the possible crime, he had a conversation with Plaintiff.  Id. ¶ 10.  During the conversation with Plaintiff, Officer Rosario suddenly "assaulted and beat" Plaintiff.  Id. ¶ 11. Plaintiff did not verbally or physically provoke Officer Rosario.  Id. ¶ 12.  Officer Rosario tackled Plaintiff, physically restrained him, and repeatedly punched Plaintiff on his face, head, and other parts of his body.  Id. ¶ 13.  Officer Rosario did not witness Plaintiff commit a crime or have probable cause to believe Plaintiff committed any crime.  Id. ¶ 15.  Officer Rosario's assault on Plaintiff resulted in Plaintiff being physically and emotionally injured and made to suffer public ridicule and personal embarrassment.  Id. ¶ 18.

Plaintiff further alleges that Chief Winslow and the City were responsible for the administration of the Springfield Police Department and the development of policy and training of said department. Am. Compl. ¶¶ 19, 20. As is relevant to Plaintiff's failure to train and supervise claim (Count Two), Plaintiff alleges that Chief Winslow and the City were aware that morale was low. Id. ¶ 30. In October 2017, Sergeant Grant Barksdale of the Springfield Police Department stated that, for a few years prior, widespread dissatisfaction in the ranks of the Springfield police officers put Chief Winslow and the City on notice that the education of employees as to their duties, the development of department personnel, and the establishment of professional standards for employees was severely deficient. Id. ¶ 31. A poll of 82% of the membership of the union representing Springfield police officers showed that 84% believed that Defendant Winslow's performance in establishing professional standards for employees was unsatisfactory during a time period covering the date of Officer Rosario's assault on Plaintiff. Id. ¶ 32. The same poll showed that 85% of Springfield officers believed that Chief Winslow's performance in the education of employees as to their duties was

unsatisfactory.  Id. ¶ 33.  Plaintiff alleges that previous attempts to remedy Springfield officers' complaints regarding training and professional standards "fell on deaf ears."  Id. ¶ 34.  Moreover, Chief Winslow did not have a written employment contract with the City, even though previously hired chiefs had written contracts containing employment duties and performance  criteria, such as establishing professional standards and educating employees as to their duties.  Id. ¶ 35.

Plaintiff further alleges that Chief Winslow and the City were aware that Officer Rosario had been the subject of previous reports of violent outbursts, including slamming his fist on a car during a traffic stop (id. ¶ 36) and pulling a taser on a man sitting down at a warming center for refusing to get up (id. ¶ 37).  In addition, Chief Winslow and the City were aware Officer Rosario was experiencing difficulties at home and that he suffered from lack of sleep on the date in question.  Id. ¶ 38.  Internal affairs files revealed that Officer Rosario's supervisors noticed something amiss in the days leading up to the assault.  Id. ¶ 39.  Officer Rosario informed his supervisors the day before the assault of Plaintiff that he was having a hard time at home and was struggling to balance his

official duties and personal problems.  Id. ¶¶ 40, 41.  Officer

Rosario received no response.  Id. ¶ 41.  Plaintiff asserts that Chief

Winslow and the City's failure to respond to the problems brought

to their attention by Officer Rosario and other Springfield police

officers is evidence of their deliberate indifference to matters and to

the rights of persons with whom such an untrained employee comes

in contact.  Id.  ¶ 43.

Plaintiff further alleges that Chief Winslow and the City's

failure to address the problems concerning the education of

employees as to their duties, the development of department

personnel, and the establishment of professional standards for

employees is clear evidence of their deliberate indifference to such

matters and the rights of person with whom such untrained

employees come in contact.  Am. Compl. ¶ 44.  Chief Winslow and

the City's failure to properly train and supervisor Officer Rosario

and other officers and their indifference to numerous complaints

regarding training over the course of several years was so

widespread as to constitute a course of conduct or custom of failing

to train and supervise employees.  Id. ¶ 45.

In July 2019, the City and Chief Winslow filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants move to dismiss Count Two, the failure to train claim against Chief Winslow and the City, and Count Five, the respondeat superior claim against the City.

## V. ANALYSIS

### A. Count Two States a Claim but the Official Capacity Claim Against Chief Winslow is Dismissed as Duplicative

The City moves to dismiss Count Two, the failure to train claim, arguing that the Amended Complaint consists solely of conclusory allegations unsupported by any accompanying facts other than Plaintiff's own experience of alleged excessive force. The City asserts that the additional facts alleged by Plaintiff do not establish a pattern of similar constitutional violations and do not provide for the rare case where a single incident may be sufficient to demonstrate deliberate indifference.

Chief Winslow moves to dismiss Count II against him in his official capacity for the same reasons raised by the City. Chief Winslow further argues that the claim against him in his individual capacity fails because Plaintiff does not allege any direct or personal

involvement or participation by Chief Winslow regarding the incident and the alleged injuries suffered by Plaintiff.

Plaintiff responds that Chief Winslow and the City knew that officer morale was low.  They were on notice that the education of employees as to their duties, the development of department personnel, and the establishment of professional standards for employees were viewed as severely deficient by the majority of officers under their charge.  They had notice of previous reports of violent outbursts by Officer Rosario, including slamming his fist on an automobile during a traffic stop and pulling his taser on a man who refused Officer Rosario's order.  Plaintiff asserts that these two incidents suggest a pattern that shares similarities with the assault of Plaintiff by Officer Rosario.

A municipality can be liable under § 1983 where a custom, policy, or practice effectively caused or condoned the alleged constitutional violations.  <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690-91 (1978); <u>see</u> <u>also</u> <u>Matthews v. City of E. St. Louis</u>, 675 F.3d 703, 708 (7th Cir. 2012).  A claim against a city employee in his official capacity is treated as a claim against the city.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).

To state a <u>Monell</u> claim, a plaintiff must allege that (1) he has suffered the deprivation of a constitutional right and (2) that an official custom or policy of the local government caused that deprivation.  <u>See</u> <u>Wagner v Washington Cty.</u>, 493 F.3d 833, 836 (7th Cir. 2007).  A plaintiff may establish an official policy or custom by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.  <u>Palmer v. Marion Cty.</u>, 327 F.3d 588, 594-95 (7th Cir. 2003) (citations omitted).

In limited circumstances, a municipality's decision not to train employees can rise to the level of a government policy.  <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).  A municipality's failure to train and supervise employees constitutes a policy or custom if it "amount[s] to 'deliberate indifference to the rights persons with whom the [untrained employees] come into contact.'"  <u>Id.</u> (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989)); <u>see</u> <u>also</u>

Sornberger v. City of Knoxville, Ill., 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing Monell liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government."). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)) (further noting that "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights").

Given the liberal pleading standards, the Court finds that Plaintiff has stated a failure to train claim against the City. Plaintiff alleges that Chief Winslow and the City were aware of complaints regarding training and professional standards over a period of years. Plaintiff further alleges Chief Winslow and the City received previous reports of violent outbursts by Officer Rosario, allegedly indicative of a lack of training. Finally, a reasonable inference from the allegations of the Amended Complaint is that the lack of

training caused the alleged violation of Plaintiff's rights. Plaintiff has plausibly alleged that the City deliberately chose an inadequate training program that would cause violations of constitutional rights.

Defendants assert that the prior incidents did not rise to the level of constitutional violations and, therefore, Plaintiff does not allege a pattern of similar constitutional violations. However, at this stage of the litigation, the allegations are sufficient to state a claim.

Plaintiff's claim against Chief Winslow in his official capacity, however, is duplicative of his claim against the City. An official capacity suit against an individual is "another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted). Therefore, Plaintiff's claim against Chief Winslow in his official capacity is dismissed. See Finch v. City of Indianapolis, 886 F. Supp. 2d 945, 950 (S.D. Ind. 2012); Brandt v. Bd. of Educ. of City of Chicago, 420 F. Supp. 2d 921, 936 (N.D. Ill. 2006), aff'd, 480 F.3d 460 (7th Cir. 2007).

As for the individual capacity claim against Chief Winslow, the Court notes that failure to train claims are usually maintained against municipalities and not individuals. <u>Sanville v. McCaughtry</u>, 266 F.3d 724, 739 (7th Cir. 2001). A supervisor is not liable under § 1983 for his subordinate's conduct unless the supervisor was personally involved in that conduct. <u>Chavez v. Illinois State Police</u>, 251 F.3d 612, 651 (7th Cir. 2001). It is not enough that the supervisor was negligent in failing to detect and prevent subordinate misconduct. <u>Jones v. City of Chicago</u>, 856 F.2d 985, 992 (7th Cir. 1988). A supervisor may, however, be liable for "'deliberate, reckless indifference' to the misconduct of subordinates." <u>Sanville</u>, 266 F.3d at 740; <u>Jones</u>, 856 F.2d at 992 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

Here, Plaintiff alleges that Chief Winslow had personal knowledge of the incidents regarding Officer Rosario, the alleged lack of training, and the perceived deficiencies in training over a period of years but ignored the situation. Therefore, at this stage of the litigation, the Court finds Plaintiff has stated a claim against

Chief Winslow in his individual capacity.  <u>See</u>, <u>e.g.</u>, <u>Terry v. Cook</u> <u>Cty. Dep't of Corr.</u>, No. 09-cv-3093, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (finding the plaintiff stated an individual capacity failure to train claim against the sheriff where the plaintiff alleged the sheriff "failed to correct a deliberately indifferent policy that caused a constitutional injury").

**B.    Plaintiff States a Respondeat Superior Claim Against the City Based on the Alleged State Law Assault and Battery Claims But Not Based on the §1983 Claims**

The City next moves to dismiss Count Five.  The City acknowledges that the Court previously denied the City's prior motion to dismiss regarding this Count.  The City seeks to preserve its argument that a municipality cannot be held liable under §1983 on a respondeat superior theory.

The Court agrees that the City cannot be held liable under § 1983 on a respondeat superior theory.  <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 822 (7th Cir. 2009) ("It has long been established that there is no respondeat superior liability under section 1983.").  This is because local governments are only liable under § 1983 for their own illegal acts.  <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).

Here, however, Plaintiff also alleges that the City is vicariously liable for Officer Rosario's conduct as alleged in the state law claims of assault and battery in Counts Three and Four. The City can potentially be liable under the theory of respondeat superior with respect to Plaintiff's state law claims. See Woods v. Cole, 181 Ill.2d 512, 717 (1998) ("Under the doctrine of respondeat superior, a principal may be held liable for the tortious actions of an agent which cause an injury, even if the principal does not himself engage in any conduct in relation to the plaintiff."); Smith v. City of Chicago, 143 F. Supp.3d 741, 759 (N.D. Ill. 2015); Bagent v. Blessing Care Corp., 862 N.E.2d 985, 991 (Ill. 2007) ("Under the theory of respondeat superior, an employer can be liable for the torts of an employee, but only for those torts that are committed within the scope of the employment."). Therefore, the Motion to Dismiss Count Five is GRANTED with respect to a § 1983 respondeat superior liability claim but DENIED with respect to a respondeat superior claim related to Plaintiff's state law claim.

## VI. CONCLUSION

For the reasons stated, the Motion to Dismiss (d/e 13) is GRANTED IN PART and DENIED IN PART. The official capacity

claim against Chief Winslow in Count Two is DISMISSED. To the extent Plaintiff seeks § 1983 liability against the City based on a respondeat superior theory in Count Five, the Motion to Dismiss is GRANTED. Otherwise, the Motion to Dismiss is DENIED. Defendants shall file an answer to the Amended Complaint on or before September 3, 2019.

**ENTERED: August 19, 2019**

**FOR THE COURT:**

      **s/Sue E. Myerscough**
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**