# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| ROBERT HUMES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 19-cv-3050 |
| SAMUEL ROSARIO, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter came before the Court on February 10, 2022, for an evidentiary hearing (Hearing) and a Report and Recommendation containing findings of fact and conclusions of law on the Plaintiff's claim for damages and attorney's fees to which Plaintiff Robert Humes is entitled on his claims against Defendant Samuel Rosario. The hearing was held by videoconference. Plaintiff Humes appeared in person and with his attorney J. Robert Anielak. Defendant Rosario did not appear.

Humes alleged in the Amended Complaint (d/e 16) that on February 27, 2017, Rosario was a police officer with the Springfield Police Department. Officer Rosario came to Humes' residence to investigate a possible crime. At that time Rosario assaulted and battered Humes (the Incident). Humes asserts claims against Rosario for use of excessive force

in violation of Humes' civil rights under 42 U.S.C. § 1983; assault under Illinois law; and battery under Illinois law.  Humes seeks punitive damages and attorney's fees under the § 1983 claim.  <u>Amended Complaint</u>, Counts One, Three, and Four.

Defendant Rosario was served on July 18, 2019.  See <u>Affidavit of Service (d/e 20)</u>.  Rosario failed to appear or participate in these proceedings.  The District Court entered partial summary judgment against Rosario, finding him liable on Humes' claims.  <u>Opinion entered February 1, 2021 (d/e 36)</u>, at 7-8, 18.  Humes subsequently waived his right to a jury trial on damages and agreed to proceed before this Court.  <u>Minute Entry entered February 12, 2021</u>.  The District Court referred the matter to this Court to conduct the Hearing and prepare a Report and Recommendation.  <u>Text Order entered January 10, 2022</u>.  At the time of the Hearing, Humes again confirmed that he waived his right to a jury trial.

Upon careful consideration of the evidence presented at the Hearing, arguments of counsel, and the applicable law, this Court Reports and Recommends the following findings of fact and conclusions of law on Humes' claims for damages and attorney's fees against Rosario.

## FINDINGS OF FACT

Humes testified at the Hearing about the Incident and submitted a photograph of the injuries to his face from the assault by Rosario. The photograph was marked as Exhibit 1 and was admitted in evidence. Humes also introduced into evidence an edited version of the body camera audiovisual recordings of the Incident created by Rosario's body camera and the body camera of Springfield Police Officer Manzanares (Video). The Video was posted on YouTube by an organization named 4TheRecord.org, available at [Officer Samuel Rosario throwing punches - Springfield, Illinois - February 27, 2017 - YouTube](). The Court admitted the Video as Exhibit 3 for the Hearing. The Court viewed the audiovisual recording. Humes also submitted certified copies of public record documents from the Illinois Circuit Court of Sangamon County, Illinois, establishing that in August 2019 Rosario was convicted after a jury trial of the crimes of assault and official misconduct for his actions in the Incident. The Court record was marked as Exhibit 2 and was admitted in evidence. The recommended Findings of Fact are based in part on this evidence.

On February 27, 2017, at approximately 11:55 p.m., Rosario and Officer Manzanares came to Humes' residence in Springfield, Illinois. Humes lived there with his mother, siblings, and a nephew. Humes' mother

called the police because her daughter had broken a glass table belonging to Humes' mother. Rosario approached the house. The mother was standing on the porch and Humes was in the yard. The daughter had left by the time Rosario arrived. Rosario said that the officers would look for her, and if they found her, they would arrest her and charge her with criminal damage to property.

Upon hearing Rosario state that the daughter would be charged with criminal damage to property, Humes became verbally abusive to Rosario. He wanted his sister to be charged with an additional crime. Humes cursed and became verbally abusive toward Rosario and demanded the badge numbers of both officers. He pointed at Rosario briefly with a broom once. Rosario became verbally abusive toward Humes. Rosario approached Humes and pushed Humes and stepped back. Rosario began daring Humes to fight him. Rosario baited Humes to fight him for several minutes, but Humes refused. Rosario promised not to arrest Humes if he would fight Rosario. Humes responded with verbally abusive language similar to the language Rosario used, but refused to fight Rosario. After several minutes, Rosario approached Humes again and started punching Humes. Rosario pushed Humes to the ground and kept punching Humes while he was down on the ground. Rosario punched Humes in the face, head, neck, and

upper body. Officer Manzanares approached Humes and Rosario to arrest Humes. Rosario told Officer Manzanares not to arrest Humes. After a few minutes, Rosario let Humes get up and stopped punching him. Humes and Rosario continued to argue. Eventually, Rosario and Officer Manzanares left.

After the incident, Humes went to an urgent care facility with pain in his neck. The healthcare provider at the urgent care facility gave Humes a neck brace and told him to wear it for a week. He did not seek any other medical treatment for his physical injuries from the incident. Since the incident, Humes testified that he has experienced a continuing fear of law enforcement officials. This fear has caused him to avoid places where law enforcement officers would generally be present, including facilities open to the public such as train stations and hospitals.

The group, 4TheRecord.org, posted the Video on YouTube shortly after the incident. Other individuals who viewed the Video posted offensive and derogatory comments toward Humes on YouTube. Humes testified that the publication of the Video caused Humes such humiliation that he moved away from Springfield to Topeka, Kansas. The manager at his first job in Topeka became aware of the Video and mentioned the Video to Humes. Humes quit that job as a result.

After the Incident, the Springfield Police Department ordered an outside criminal investigation of the Incident. Upon completion of the investigation, Rosario's employment at the Springfield Police Department was terminated. Rosario was also charged criminally with official misconduct and assault. On August 21, 2019, after a jury trial, the jury found Rosario guilty of the crimes of battery and official misconduct. See Opinion entered February 1, 2021, at 4; Plaintiff's Exhibit 2, Official Docket and Record of Conviction in People v. Rosario, Sang. Co. Cir. Ct. Case No. 2017 CF 000217.

## CONCLUSIONS OF LAW

### JURISDICTION

This Court has federal question subject matter jurisdiction over Humes' claims under 42 U.S.C. § 1983. See 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Humes' state law assault and battery claims. 28 U.S.C. § 1367. Venue is proper because the events giving rise to Humes' claims occurred in this District. 28 U.S.C. § 1391(b)(2).

### AWARD OF DAMAGES

The Court has already determined that Rosario used excessive force against Humes in the Incident in violation of his constitutional rights. Rosario assaulted Humes in the Incident, and Rosario battered Humes in

the Incident.  Opinion entered February 1, 2021, at 7-8, 18.  The matter before this Court is the appropriate amount of damages and attorney's fees to award Humes.

All three claims are tort claims.  Section 1983 is a species of tort liability that entitles the injured person to recover damages for common law torts such as Humes' other claims for assault and battery.  See Carey v. Piphus, 435 U.S. 247, 253 (1978).  Humes is entitled to recover compensatory damages for the injury caused by Rosario's wrongful conduct.  Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306-09.  Humes may also recover punitive damages under his § 1983 claim for violation of his constitutional rights.  Humes must demonstrate that Rosario acted with an evil motive or intent, or a reckless or callous indifference to the federally protected rights of others.  Smith v. Wade, 461 U.S. 30, 35, 56 (1983); Calhoun v. DeTella, 319 F.3d 936, 942 (7th Cri. 2003).  The purpose of an award of punitive damages is "to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct."  Kemezy v. Peters, 79 F.3d 33, 34 (7th Cir. 1996).

The Seventh Circuit jury instruction on punitive damages under 42 U.S.C. Section 1983 states that one of the purposes of punitive damages is

to serve as an example to the defendant and others not to engage in similar conduct in the future. Seventh Circuit Jury Instruction 7.28 Punitive Damages.

### Compensatory Damages

The evidence demonstrates that Humes suffered damages from Rosario's wrongful acts. Rosario shoved Humes, pushed him to the ground, and repeatedly punched Humes in the face, head, neck, and upper body. Humes went to an urgent care facility due to the pain caused by Rosario's attack. Humes, however, did not suffer a severe injury such as a broken bone, internal bleeding, or injury to an internal organ. Also, after he wore the neck brace for a week, Humes did not suffer ongoing physical pain due to Rosario's attack.

Humes also suffered ongoing emotional pain and distress from the Incident. Humes has a continuing fear of law enforcement officials. His fear has caused him to avoid any location where law enforcement officials are present, including public facilities such as train stations. This ongoing emotional pain and suffering was caused by Rosario. Humes has also suffered emotional pain and humiliation after the Video was posted on YouTube. Individuals posted offensive and derogatory comments on YouTube about Humes after viewing the Video. Individuals commented to

Humes about the Video, including his manager at his first job in Topeka, Kansas.

Humes did not submit evidence of other types of damage. He did not submit evidence of the cost of the medical care he received at the urgent care facility. He did not present any evidence of any damage to his property or any lost income due to Rosario's attack.

After weighing the evidence, the Court recommends an award of $10,000 in compensatory damages for Humes' injuries. Humes suffered temporary physical pain but no lasting physical injuries. He also suffered some emotional injuries. His attorney, however, conceded that his compensatory injuries were not great. He argued that the main purpose of an award should be to send a message to deter police and law enforcement officials from illegally assaulting citizens as Rosario did. The goal of such deterrence is more appropriately sent through an award of punitive damages discussed below. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 20-21 (1991). The compensatory damages are to compensate Humes for injuries, not to deter or punish. See Saccameno v. U.S. Bank National Association, 943 F.3d 1071, 1086 (7th Cir. 2019). The Court recommends an award of $10,000.00 for Humes' personal injuries from Rosario's wrongful conduct.

<u>Punitive Damages</u>

The Court finds that Humes is also entitled to an award of punitive damages on his § 1983 claim. The evidence shows that Rosario committed an unprovoked assault on Humes. Humes complained and argued with Rosario, but he did nothing to instigate or threaten to instigate a violent encounter with Rosario. The Video shows that Rosario decided to attack Humes out of anger and animosity toward Humes. Rosario first tried to bait Humes into fighting. When that did not work, Rosario attacked Humes. Humes still did not fight back. Rosario clearly acted in total disregard for Humes' rights. The Court recommends an award of punitive damages to punish and deter such willful abuses of power by law enforcement officers.

In determining the appropriate amount of punitive damages, the Court will consider: the reprehensibility of Rosario's conduct; the impact of Rosario's conduct on Humes; the relationship between Rosario and Humes; the likelihood that Rosario would repeat the conduct; and the relationship of the award of punitive damages to the actual harm suffered. <u>See</u> <u>Seventh Circuit Civil Pattern Jury Instruction</u> § 7.28; <u>see</u> <u>also</u> <u>Smith v. Wade</u>, 461 U.S. at 35, 56. In this case, Rosario's conduct was clearly reprehensible. Rosario abused his power as a police office and violently

attacked Humes without cause. Rosario's relationship to Humes as a police officer makes his attack of Humes worthy of a punitive award. Rosario is not likely to commit another attack. He was fired as a police officer and convicted of official misconduct and battery. He is not likely to be employed as a police officer again. Rosario has also already been punished by his criminal conviction. The Court, however, believes that a punitive damage award is needed to deter other officers from engaging in this type of abuse of power. The amount of the award should be enough to deter other officers from engaging similar conduct but should bear some relationship to the actual harm.

      Considering all these factors, the Court finds that a punitive damage award of $50,000.00 is appropriate. The Court finds that this award is sufficient to deter law enforcement officers from engaging in similar abuses of power and is reasonable in light of the compensatory damages suffered by Humes. Even though Plaintiff's counsel suggested an award of $500,000 would be appropriate, the Court finds that a higher award is not needed to punish Rosario further because he has already been punished by the criminal conviction and the amount of punitive damages is sufficient to deter others from engaging in such conduct.

Attorney's Fees

Humes has filed a Motion for Attorney Fees (d/e 43) (Motion). The Court finds that Humes is entitled to recover reasonable attorney's fees on his § 1983 claim. 42 U.S.C. § 1988(b). A reasonable fee is the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate. Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014). This is referred to as a "lodestar" method. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar calculation generally yields a presumptively reasonable fee. The Court may in its discretion adjust the fee based on factors such as the time and labor required, the novelty or difficulty of the case, the degree of the success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. Montanez, 755 F.3d at 553; Hensley, 461 U.S. at 430.

In this case, Hensley's attorney's hourly rate of $250.00 per hour is reasonable. This Court has approved similar hourly rates in similar cases for attorneys with similar backgrounds. See e.g., Joe Hand Promotions, Inc. v. Hibbard, 2015 WL 5294672, at *5 (C.D. Ill. September 9, 2015) (finding $300 per hour to be a reasonable rate based on the Court's "experience and knowledge of local billing practices."). The Motion shows

that Humes' attorney spent 81.5 hours on this case. The resulting calculation is $20,375.00 in fees.

Humes, however, lost on his claims against the other Defendants, Springfield Chief of Police Kenny Winslow and the City of Springfield, Illinois (City). When the plaintiff is only partially successful, the Court may eliminate the hours spent on the losing claims from the lodestar calculation or may reduce the award to account for Humes' limited success. Hensley, 461 U.S. at 436-37; Montanez, 755 F.3d at 556-57. Much of the time billed was spent on the unsuccessful claims against Winslow and the City. The Court recommends that the appropriate solution in this case is to reduce the award by half to reflect the limited success. The Court, therefore, recommends awarding the attorney to Humes the sum of $10,187.50 which is one half of the fee request ($20,375.00). The Court finds the expenses of $860.25 to be reasonable. The Court, therefore, recommends awarding attorney's fees and costs in the sum of $11,047.75.

THEREFORE, THE COURT RECOMMENDS that the Court adopt these Findings of Fact and Conclusions of Law and enter judgment in favor of Plaintiff Robert Humes and against Defendant Samuel Rosario in the total sum of $71,047.75, consisting of $10,000 in compensatory damages, $50,000 in punitive damages, and $11,047.75 in attorney fees and costs.

The Court recommends that Plaintiff's Motion for Attorney Fees (d/e 43) should be ALLOWED in part and DENIED in part as set forth above.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   February 23, 2022

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE